Case numbers 23-1942 and 23-1998 Michael Mockeridge et al. versus Harry Harvey et al. Oral argument to be 15 minutes for plaintiffs, 15 minutes to be shared by defendants. Counsel for the appellant, you may proceed. My vision's just not as good as it used to be, I'm sorry to say. May it please the court, Matthew Nelson on behalf of the defendant appellant Schmidt and Harvey and one question with regard to the time rate showing two minutes, I believe I have six minutes? You have three minutes of rebuttal scheduled? Correct. Three minutes of rebuttal but I think the split is six, six and then three minutes for rebuttal for 15 total. I'm sorry. That's okay, we should get this sorted out. They have it marked wrong, sorry about that. You can go ahead. May it please the court, earlier this year and in preparation for this hearing today we ran across this court's more recent explanation of the standard with regard to qualified immunity in Moore versus Oakland County. There this court said in identifying clearly established rights, the Supreme Court warns lower courts against defining the rights at a high level of generality, that the claimants must show that the rights are sufficiently clear that every reasonable official would have understood that the officials actions violated those rights and what that usually means, and this is what we thought to be useful for today, that usually means that there's a case with facts that are similar enough that it would squarely govern this one. And how similar those facts need to be depends on the proposition at issue. I think that I had a case where the police officer had run over a motorcyclist basically or allegedly on purpose and killed him in a chase and the question was whether that was a lethal force and the argument for the defendant was well you don't have a case with the cruiser you know running over a guy in a motorcycle and our answer is it's obvious to anybody that that's lethal force. So I mean there's a plenty of case law. Every frail cottage gets protected, curtilage is protected, so what what was hard to figure out about the scope of the Fourth Amendment in this case? So here the the issue we believe is that the district court erred in assessing whether or not every reasonable official walking up to this to the property line here would say this is curtilage. Especially when they came there on the report that this was an unlicensed campground. So there's a question already in existence is this a commercial campground that's being established or is this something else? And they'd never seen anything like it before. Further, even if it's a campground it seems like Morgan controls here if the cabin is a house and Morgan would clearly establish correct? Like Morgan says it was a Fourth Amendment violation to invade property to look at the property and that's precisely what happened here. So your honor if I may a question before I answer your question if we're referring to the main structure as a cabin as opposed to the house as opposed to a house. We're referring to the cabins which are the bedrooms without the kitchen. So each of these what would have been described as by the by the plaintiff as accessory structures and what they've reported to the government if the court is to say that those units are themselves houses with curtilage I would submit there's not a case out there that says that. But I would further distinguish Morgan by saying in Morgan you had a classic example of this is clearly a house and the officers are within a few feet in the middle of a law enforcement operation. Okay so the court has said a hotel qualifies as a house I mean these are cabins where people spend the night. I don't it just strikes me as obvious that they would be considered a house. I think what the court has said is that the rooms inside a hotel have have protections that are that are that are subject to. Why what is the basis? Well because they don't have bathrooms I don't think I don't think houses had bathrooms. I mean they have electricity which actually is better than at the time of the founding. So I think if you look at the the totals the totality of the structure the first question for I believe the the analysis here is is walking around these houses if they're houses is that within is that in clearly defined curtilage? Well I think that that's I think that I think that Mr. Harvey's case is a more difficult case than the case with regard to Mr. Gibson and Mr. Schmidt. I'll acknowledge that. What's confusing about curtilage that they think it's a shed or something or like what's confusing? So they walk up they have no they've never seen anything like this before it's an unusual situation. What's confusing? What's confusing about it it's more than 80 or 90 feet away from the house that's on the actual property. It's their property. I mean it is their property but mere trespass on the property doesn't that doesn't necessarily mean that it's curtilage. So the question here is as they walk up they say there's these structures we've never seen before. If they're if they're aware of what the law is they say well under Wigrin this there's a there's this understanding that we're doing something that's administrative so there's a lesser interest with regard to privacy. We're looking at the exterior of these properties and so I'm not sure whether this is curtilage or not curtilage and the question for this court is is the case law so clearly established that we can go from Morgan which is as close as I think this court has ever gotten to this case and say with absolute certainty every official would understand. So it's okay to walk on somebody's property you know like if physical invasion under Jones walk on somebody's property and look in the of a structure and be poking around with the flashlight and and I mean that's that's still we're scratching our heads about whether that there's a Fourth Amendment issue involved. So I would say first with regard to Schmidt and Gibson they didn't do that. Their only testimony is is that they were on the property and Schmidt's the undisputed testimony is that Schmidt walked through this area with the cabins to the front door and back. Now there's a photograph of him standing like three feet away. There is and his testimony is is that that he was that was within the direct path from the property line to to where he was going that's his testimony. But with regard to with regard to to Mr. Mr. Mr. Harvey that with regard if if he is standing in an area that is it's questionable as to whether it's curtilage or not I think my best response to that is that he as the magistrate court judge said the magistrate judge said he didn't crane his body into unusual positions to look he was simply doing an administrative search with regards which would grin but I recognize without a warrant we have a case Gardner from 2019 before this you can't do that you can't go on people's property without a warrant to do this compliance stuff you have to you have to get authority to do with that but okay so you're in the red yes you'll get your rebuttal we'll hear from co-counsel thank you your honors my name is John Jim Lerro I represent appellant Kenneth Gibson and to address this courts questions to co-counsel Morgan does not Jones does not apply and it's for two reasons and it's this court holding in Wittgen specifically this court identified two issues in Wittgen that are present in this case the first is administrative searches are treated differently than criminal searches Morgan and Jones are both criminal cases the next part of Wittgen is simply put non technologically non tech technology assisted searches naked-eye observations are constitutionally permissible even under the Fourth Amendment even within curtilage which means Jones uses a piece of technology that is far superior to visual naked-eye observation in fact the GPS tracker is designed to avoid naked-eye observation Morgan was just naked-eye Morgan was naked-eye and the reason Morgan is I'm sorry your honor I didn't mean to cut you off I'm sure that's what you were gonna say no Morgan is naked-eye but the issue with Morgan first and foremost is that it's still a criminal case and officers there were at the back of the house which had a fence so the argument regarding curtilage was a little bit more clear than it is here in in this case but also with regard to Wittgen right we're talking about administrative search the other issue this court didn't even apply a property-based approach so why what's wrong with holding that it's been essentially it maybe you're correct as a matter of reasonable expectation of privacy but since Jardines and Morgan there isn't this kind of clarification that there's a second property-based approach and Wittgen didn't apply that at all Wittgen does not apply that but the reason we believe that Wittgen is still controlling is because when it's identified that administrative searches are treated differently than criminal searches administrative versus administrative investigatory your point is for administrative searches you're still allowed to trespass on people's property my position is for administrative searches is it was not clearly defined that Wittgen is now disavowed and no longer good law when Gibson and the other government officials did this search that that is my position right the the law has changed but it was not sufficiently clear because of the point about naked eye observations in Wittgen and the distinction between administrative and criminal based investigations those two points differentiate all criminal case and I acknowledge that Fourth Amendment law fundamentally is grounded in criminal law but for a government official such as a zoning administrator to read Wittgen and say okay while I'm still subject to the court's analysis based on criminal law I have a little bit more leeway under Wittgen until an opinion comes out to tell me one administrative searches and criminal searches are now held to the same standard or two there is no distinction anymore so any trespass pursuant to Jones is now constitutionally fundamentally wrong. Do you think it matters that Wittgen went out of its way to suggest that the defendants there did not look inside the building they just looked at the exterior and if I understand correctly your client did put a flashlight and look in the window. Wittgen does define that it was purely a naked eye observation to the external structure. They didn't look inside. My client Mr. Ken Gibson did not look inside he measured he was the Caledonia township zoning administrator he measured the distance from the accessory structure to the nearest property line which goes back to the point in Morgan where this court had a problem with the fact that officers surrounded the residents for a object for their objective which was a knock and talk at the front door so to extrapolate on that this court found that look if you're going to go to the front door go to the front door there's no reason to go to the back door so Mr. Gibson inspecting property lines and setbacks went to the property line to inspect a setback so as much as Morgan is distinguishable its principle is still valid here because Mr. Gibson took the shortest point from point A to point B to visually observe whether there was a violation of the Caledonia township zoning ordinance which brings me to my final point your honors this court questioned co-counsel about well aren't these cabins aren't these dwellings don't people sleep there I would love to have an answer to that question because Mr. Mockridge submits on the Caledonia township permit application that their accessory structures an individual cannot sleep under Caledonia township zoning in an accessory structure because there's no fire detector there's no smoke detector when was this the permits at post hoc all these events right the permit follow that the permit was grant issue requested after this inspection that is true so I mean the declaration that you're invoking didn't exist at the time of the events in this case so I don't know how that post hoc description really is germane here well one we have to take the facts that were reasonably known to the zoning administrator at the time he didn't know what these what these structures were when mockridge applied for the permit he calls them accessory structure I know but that's just not it's like prejudicial evidence it's just not relevant to what's going on before that your honor I see my time's about to expire may I answer may address your point it is relevant because if it's a dwelling it's subject to higher Fourth Amendment reasonable expectation of privacy if it's an structure it's subject to less totally get that but just for purposes of wrapping up just assume he never said that okay because it comes after these events unless I'm mistaken and I just think it's utterly irrelevant to the question whether these people acted obviously contrary to law when they go up there and are looking in the windows and doing all the stuff they're doing so then so you got you got one minute seconds well it's what a minute thank thank you rudder because the nature of the structures was unknown at the time and it's still clouded today there is no way that a reasonable government official could have known that the entry onto the land to look at these buildings that might be dwellings that might be all of us who have spent time in northern Michigan I mean you see like they sell these things you know by the they sell them at Cabela's I think I mean these little log cabins with a door and they look like a little cabin they do not look like a shed they don't look like something that's gonna have a generator from 50 years ago in there they look like and they have windows and they look like little cabins and these look like little cabins and at some point doesn't it become pretty obvious that these are little cabins and that they're not they're not a storage place they've got a bed in them I mean at some point doesn't a lightbulb go on for these officers that they they need to get off this property and get away from these things that have beds in them where people sleep and were apparently sleeping or inside the second time they came around only upon further investigation and upon crossing the property line would that have been them okay but didn't they hang around for a while and I mean what did your client do was he just out there with a tape measure and that's it yes your honor he was out there with a tape measure he was out there with the other government officials he took the measurement questioned the setback requirement and they left as a group did he come back the second time no he had already resigned his position by that time okay that's helpful information thank you sir thank you for your argument we'll hear from mr. Ellison I guess well you come here so much I mean I'm really gonna want to hear your explanation in response to the point your friend just made about don't they need to actually approach and look in which is the objectionable stuff in order to realize that this is you know like a little residence to two responses one would take a half step back to put one fact into this this discussion that is being missed in all the discussion here they didn't come in through the front they came in through the back right so I think that changes if these if these guys had just come up to the front door knocked on the front door and said hey we hear that there's a problem here can we come on your property to do an inspection of this we want to see what's going on that's not what they did when they got up to the gate that the gate where there's the actual sign with the National Forest joking sign they then turn around and go on the back side of property to kind of to you know come in undetected that way I think that that's one that I guess that's that I mean I get how that's sort of offensive but why is that material as a legal matter well I think it's material because it establishes they weren't here trying to fulfill what what the law actually provides and what the law actually provides is is that and this is going to be what was going to be my opening 10-second opening is as Camara and Gardner tell inspectors you've got to get a warrant or permission Jardine's and Morgan both tell a reasonable officer that if you're going to be within the curtilage of a piece of property you need a warrant or permission and the only real question is is whether or not there is a this constitutes a curtilage and I think this is a pretty easy question judge Ludington when reviewing this yeah I don't want to put words in his mouth but it's like I kind of know it when I see it here we went through all the analysis and I think he reached a reasonable analysis both the magistrate judge and judge Ludington both found that this was a curtilage well so just to I mean the question isn't whether it was a curtilage the question for QI purposes is whether they should have known whether it would be obvious to these officers that it was a curtilage so that's said I mean I get your point about coming around to the the property but why is it obvious to these guys that it's a curtilage I think it's obvious because the curtilage you can see the picture and in fact we've included pictures in the actual brief itself I mean I mean I'm from I won't say northern Michigan middle Michigan I'm from the from Saginaw County I have a cat I know it's not northern Michigan and I'm gonna get if anybody else is listening from northern Michigan I'm gonna get flailed around my way home but I was gonna say Bay City north of Bay City so Linwood yes any anyone that goes up north knows that up in northern Michigan no northern lower peninsula you come up into a scene like this where there's a house with these cabins on it this is the compound this is kind of a phrase I would use it's a compound and I don't mean compound is in you know you know that they got the forts up and the guns are blazing but it's a family it's a family camping compound that exists and I can't just from my own look at this looking at these these cabins that you're talking about these aren't sheds these aren't like a reused you know container ship container that got a roof nailed over top of it these are the quintessential things that go to the intimacies of the homes themselves and the problem here is as I see it is is that it's they had the chance to see these things because they didn't just walk up onto the line and kept going and as the testimony from below is they walked up the line stopped and looked and we and you've heard the testimony in the in the record that they could see this cabin within 15 feet of the property line what they should have done at that point is not say how can we figure out a way to go down the property by navigating through the Sixth Circuit precedence what they should have done simply go get a warrant add the warrant required warrant the warrant requirement is the rule of reasonableness that changes an unreasonable search to a so your analogy or your distinction of wood grin in the briefing seems plausible to me but when we're at QI maybe the officers were taught on wood grin which suggests that you have no reasonable expectation and trespassing around a house as long as you just look at the exterior of the house at least for some of the officers here why wouldn't we could be enough to show it's that I would point to both Jardines and to Morgan both of those cases I think further teach now I wrote down the dates of Wigrin I believe was a 2006 decision that was that way of course Morgan comes out in 2019 Jardines comes out after Wigrin you can't just look at Wigrin in the vacuum and try to ignore all the other teachings of the higher courts have said to refine I think that's a distinction without a difference and I'll tell you why is because I don't think it's a Morgan I take as teaching the principle about searching the curtilage itself is a search that is covered by it's a Fourth Amendment protected area that is required either a consent or warrant or an exception of the warrant requirement in that particular case I will grant you it was a criminal case but the real heart of that case in Morgan was whether or not a hardesty in Turk should be overruled or not it was really a question about law not about and it just happens in that particular case it was a pretty dramatic surrounding situation of a house that way but I don't think it's not the analogy we're drawing here what we're trying to draw here and judge Kevlin's just as where I was trying to get a moment ago to answer your question about you know would it be obvious to these folks in that respect at this point with qualified immunity I view and this is my this is my advocacy to below and I said it at the brief and I'm going to say it again here is is at this level the question of a curtilage is a fact question and at the QI stage you have to accept all my version of the events on behalf of my client as the one that is the base factual scenario to make this decision I I think that's a little off because I mean the concept of I mean what counts what I mean what counts is curtilage is it has a curtilage has a legal definition I agree okay now whatever facts you allege in support of your argument that it is something is curtilage basically we presume that you're right you know correct where if the district courts whatever I mean you know on QI we're not going to revisit the factual determine a what a jury could find agree but but but you only we only give you credit for those factual allegations and we can still determine based on those presumed facts whether something is curtilage so Morgan I'm going to push back slightly on you to say Morgan has suggested that this is a fact-intensive analysis and that's the phrase there's lots of facts and you have to spit them all out and then we'll tell you whether it's curtilage and what I'm what I'm this is I mean it's a closer question I'll acknowledge it's a closer question now that I've had we've had a year to sit on this and reflect on this before oral argument from when all the briefing was done really it's been a almost two years old at this point when was your briefing done mine was done well over a year ago there was a motion to dismiss that sat undecided for about a year by them you have our apologies that's that's fine we were scheduled for a trial a month or a year from last March so it's been a year and a half since we were and that was before the appeal went in obviously so it's been almost two years and so you know that needless to say we're here we're here now so I guess my point I want to get across when I want to push back on to back on upon the panel and to your point is is that at this point what I am seeing my brother counsel trying to do is rehash the facts of the curtilage to try to get a different outcome what facts is he seeking to change actual facts as opposed to whether it's curtilage he's trying to he is trying to minimize the judges conclude each of the judges conclusions below about the what you know whether how far these things were apart what did they measure who did they measure who peeked in a window I didn't peek in the window that long they're adding all that they're reformulating the facts to try to change the factual you have to at minimum I believe the court has to take at least judge Ludington's conclusion as the base facts going forward and you don't get to reassess those now ultimately they get to re-raise those in a normal full appeal and we may be back having these same discussions at a future date but the reality is is that as of right now because it's it's a factual and I'm oversimplifying okay all right fair enough the last point I guess I'd like to make is I was I'm trial counsel in this case and one of the things that is bothersome to me is that we have a bit of a handicap on our side and that my clients were not present at the time that these three office these three went on to the property and what I and of course we have to ask them what did you do in these circumstance and of course we've talked a little bit today which I think is Jardines says there's an implied license in this country for folks to come you know for officers to come in through the front path and that's a very I think a really important detail the front path and they almost did until they realized they were going to get to the front door then they turned around and went to the back side of this the the problem that I'm struggling with the most is that there are justifications being proffered by the government officials and their story just doesn't make sense and I have to point to those and I have regularly in the trial court pointing out the inconsistencies that exist in that so for they did I specifically moved to bifurcate those issues I actually only move for summary judgment as to only it would be emotional damages emotional aggravation angst mental anguish things of that nature they didn't we will we will fully acknowledge they didn't come and knock a building down or they didn't blow a hole in something over there but you know what the what is at the heart of Fourth Amendment is not about destruction of property cases like I've been before you many a times with my takings arguments and destruction of property cases what the Fourth Amendment about is about the evisceration of privacy they eviscerated the mockerages privacy mrs. Mockridge is afraid to be out there by herself anymore because these folks are just going to show up randomly through the backside of the property not even through the front path that's what the Fourth Amendment was designed to protect so if I can advocate to the last I guess my in my final points that I all I wanted to make today is this is not a physical damages case but it's not a no damages cases we keep getting thrown in our face over and over again I agree but it's still important because mr. and mrs. Mockridge were damaged in this okay second the second point is I would invite the court and and I appreciate you acknowledging me that I'm a frequent flyer so I'm going to take advantage of that I'm going to ask the court and I'm going to invite the court and of course it's within the courts discretion take the opportunity to properly frame Widgren in the context of how Jones now applies judge Murphy you actually asked that question of my brother counsel is Widgren still good law I think it's still good law on the cat's reasonable expectation standard or at least I don't think you have to readdress that at that point but Jones has come out in this court in Hicks mimicking the same holdings that the Supreme Court has said that Jones is a parallel second pathway I don't think the cases like Widgren and what was the other one I wanted to play to you support with Wigrin and one second Taylor versus Humphreys I don't think those two cases now survive after with a Jones analysis anymore justice Scalia said a Jones property based trespass approach makes easy cases easy and my brother counsels are trying to make easy cases difficult don't take the bait and then ask the court to take this opportunity to clarify that so this kind of thing doesn't happen again unless the panel has any other questions I'm done early which is I should go buy a lottery ticket now so all right mr. Ellison thank you thank you very much we'll hear a rebuttal thank you your honors just a few points as I believe judge Murphy you identified this is coming before the court on this on a summary judgment basis which does make a sort of does raise an interesting question one which we were not able to to find a clear answer for as where summary judgment has been granted in favor of the plaintiff on qualified immunity the normal rules with regard to summary judgment in this appeal apply or is there something else UI appeal it's totally interlocutory there's tons of stuff to do down the district court so we're only here because of our QI jurisdiction which means you can't argue facts so I understand I would just say we were unable to find a case that clearly that made that clear with regard to the the point you made with regard to these are these are units that can be purchased you see them on the side of the road the fact of the matter is that some of them you see on the side of the road they look like cabins and their sheds and others are apparently well I understand but but the point here is to know what the use of them actually is as was pointed out earlier in the conversation or earlier in the argument you have to walk onto the property to look inside I don't know I mean you look at these photographs it seems pretty darn obvious that these are small cabins and they're nothing else I mean this just doesn't seem like very hard to figure out that you really shouldn't be creeping in through the back snooping around cabins so the let me go to that point in terms of the coming around the backside of the property it is just as perfectly reasonable to assume that the reason they went to the backside of the visible across the property line from the backside of the property so therefore that was a lawful vantage point in the woods and you know moving up and well it's like well recall your honor that these are that the nearest one of these sheds is if I recall correctly 10 10 or 15 feet from the property line so this is not a great distance off the property line finally with regard to the at one point there was a discussion with regard to the second visit the second visit is not there's no allegation that the second visit to the property was a search if they had permission they came to the front door they had the conversation and they had permission to look inside so the second visit I think is entirely irrelevant for the purposes of it just says really hortatory matter it's too bad they didn't do that the first time your honor I might think about that I'm not going to I'm not going to hold out the what happened here as an example of a wonderful government action but what I am but our position in our position is not that our position is instead within the bounds of what sort of mistakes are allowed under qualified immunity we fit into that category in part because of Wigrin in part because of the novelty of the factual the facts that appear on the record one final correction briefing here was completed on April 26 the motion for the motion to this of this year the motion to dismiss frankly is it somewhat predictable the motion to dismiss stayed the briefing schedule in the middle so the second reason that filed right and the third and fourth briefs got filed in March and then April of this year all right thank you for that clarification all right thank you mr. Nelson no further questions so that case will be submitted as well